IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| DANIEL LANDRETH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-05085-MDH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Plaintiff's appeal of the Commissioner's denial of his application for supplemental security income (SSI) under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381 et seq. Plaintiff has exhausted his administrative remedies and the matter is ripe for judicial review.[1] After carefully reviewing the record, the Court finds the ALJ's opinion is supported by substantial evidence in the record as a whole. The decision of the Commission is **AFFIRMED**.

## BACKGROUND

Plaintiff was born in 1968 and has a high school education. He previously worked as a security guard and a gate guard. Plaintiff left his most recent job in June of 2003, which is when he alleges his disability began. Plaintiff filed an application for SSI in September of 2011, at the age of 43.

Plaintiff claims he suffers from the following physical conditions that limit his ability to work: obesity, asthma, gout, back pain, knee pain, cellulitis, and high blood pressure. Plaintiff is

---

[1] Plaintiff filed an application for SSI in September 2011, alleging disability beginning in June 2003. Plaintiff's claim was initially denied on December 21, 2011. Plaintiff filed a written request for a hearing on his claim and a hearing was held on January 4, 2013. The ALJ issued a decision on February 8, 2013 finding Plaintiff not disabled. Plaintiff appealed the ALJ's decision and the Appeals Counsel denied Plaintiff's request for a review on May 1, 2014. Plaintiff commenced the present suit on June 30, 2014.

approximately 5 foot 11 inches tall and weighs around 600 pounds. He reported that he can independently handle his own personal care, financial matters, going out in public, and driving. He reported that he cares for his 81 year-old mother and pet(s), does laundry, prepares meals for his family three to four times per month, goes grocery shopping once per month, and regularly attends church. Plaintiff alleges his back and knee pain limit his ability to sit, stand, walk, lift, squat, bend, stoop, kneel, and climb stairs. He testified that he cannot sit for longer than one hour, stand for longer than 15 minutes, walk more than 100 yards without resting, or lift more than 50 pounds. He reported that he elevates his feet two to three hours per day.

Plaintiff's medical records reveal Plaintiff has been diagnosed with morbid obesity, hypertension, asthma, gout, cellulitis, degenerative joint disease of the knees, osteoarthritis of the knees and lower back, and sleep apnea. The records show Plaintiff's hypertension, asthma, gout, and cellulitis are effectively controlled with medication. Radiological testing reveals Plaintiff suffers from "[a]t least moderate right greater than left knee DJD[.]" Physical examinations indicate that Plaintiff sometimes walks with a limp/waddle but other times ambulates normally. Physical examination records further indicate that Plaintiff exhibits tenderness and a decreased range of motion in his knee/back at certain times but not other times. Plaintiff testified, consistent with his medical records, that he is not prescribed medication for his knee/back pain and his doctors have never recommended surgical procedures to alleviate his alleged pain.

The ALJ found that Plaintiff suffers from severe impairments including morbid obesity, obstructive sleep apnea, and bilateral knee osteoarthritis. The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ assessed Plaintiff's residual functional capacity and found Plaintiff has the residual functional

capacity to perform light work as defined in 20 C.F.R. § 416.967(b), except that Plaintiff can "stand and walk for short distances up to 100 yards for a total of two hours in an eight-hour work day, cannot work from heights, must have asthma precautions, and is limited in crouching and crawling, [and] can occasionally perform other postural activities."  The ALJ concluded that Plaintiff is capable of performing his past relevant work as a security guard and gate guard.  The ALJ made an alternative finding that Plaintiff's impairments do not preclude him from performing work that exists in significant numbers in the national economy, including work as a ticket seller or telephone solicitor.  Based upon these findings, the ALJ concluded that Plaintiff is not disabled under the Act.

## STANDARD

Judicial review of the Commissioner's decision in social security cases is limited to whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied.  *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3).  Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000).  This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it.  *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008).  That the reviewing court would come to a different conclusion is not a sufficient basis for reversal.  *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009).  "If, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits."  *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)).

3

**DISCUSSION**

In order to qualify for benefits under the Social Security Act and accompanying regulations, a claimant must prove that he is disabled. *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration has established a five-step process for determining whether an individual is disabled. *See id.* at § 416.920(a).[2] Here, Plaintiff argues the ALJ erred at steps three and four of that process.

**1. ALJ did not err in finding Plaintiff's impairments do not meet/equal a listing**

At step three, the ALJ must determine whether the claimant's impairments meet or medically equal one of the impairments described in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4). Where the claimant's impairment(s) do not meet all of the specific criteria for a listed impairment, the claimant may nonetheless qualify for presumptive disability if he can show his impairment(s) are "at least equal in severity and duration to the criteria of any listed impairment(s)." 20 C.F.R. § 416.926(a). "The claimant has the burden of proving that his impairment meets or equals a listing." *Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010).

For a claimant to prove his impairment(s) equal a listed impairment, the claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Carlson v. Astrue*, 604 F.3d 589, 594 (8th Cir. 2010) (quoting *Sullivan v. Zebley*,

---

[2] The five-step process considers whether: "(1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." *Halverson*, 600 F.3d at 929. If the ALJ determines at step three the claimant's impairments do not meet or equal one of the listed impairments, then the ALJ must assess the claimant's residual functional capacity ("RFC") to use at steps four and five. 20 C.F.R. § 416.920(e).

493 U.S. 521, 531 (1990)). In determining whether a claimant's impairment(s) medically equals a listed impairment, the Commissioner is required to "consider all the evidence of record about the impairment(s) and its relevant effects on the claimant." *Gabbert v. Colvin*, No. 4:12CV596 NCC, 2014 WL 1725832, at *19 (E.D. Mo. Apr. 30, 2014) (citing 20 C.F.R. § 416.926(c)). The Commissioner must also consider "the opinion given by one or more medical or psychological consultants designated by the Commissioner." *Id.* (quoting 20 C.F.R. § 416.926(c)); *see also* Social Security Ruling ("SSR") 96–6p, 61 Fed.Reg. 34,466, 1996 WL 374180 (July 2, 1996) ("longstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence . . . must be received into the record as expert opinion evidence and given appropriate weight"). This requirement is satisfied where a State agency medical or psychological consultant signs certain documents[3] in the administrative process.

Plaintiff argues the ALJ failed to fully and fairly develop the record regarding medical equivalence because the ALJ did not obtain an expert opinion regarding medical equivalence. The Court disagrees. Plaintiff is correct that the Disability Determination Form in Plaintiff's case was signed only by a single decision maker (SDM) and not a state medical consultant;[4] however, such forms are not the only means by which an ALJ can obtain the required expert opinion evidence. *See Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) ("Indeed, the requirement to receive expert opinion evidence . . . may be satisfied by various

---

[3] For example, a SSA-831-U5 (Disability Determination and Transmittal Form); SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness); Psychiatric Review Technique Form; or various other documents on which medical and psychological consultants may record their findings. *See* SSR 96-6p.

[4] The Disability Determination Form (Form SSA-831) was signed by Mr. Allen ("disability examiner") but not Doctor Ceaser ("review physician" or "medical consultant"). Under the SDM model, the disability examiner makes the initial disability determination and the Form SSA-831 need not be signed by a medical consultant. *See generally* 20 C.F.R. § 416.1406(b)(2). Disability examiners acting as single decision makers are not considered medical sources who can provide the required opinion evidence on medical equivalency. *See Reichenbach v. Astrue*, No. 4:11CV1551 TCM, 2012 WL 4049009, at *9 (E.D. Mo. Sept. 13, 2012).

5

types of documents signed by a State agency medical or psychological consultant." (internal punctuation omitted)). Here, the records show Dr. Ballard was engaged as a medical consultant in order to conduct a consultative examination on Plaintiff and to provide an opinion regarding Plaintiff's physical limitations and ability to perform sustained, work-related functions. An ALJ's consideration of such report fulfills the ALJ's duty to consider an expert opinion on the issue of equivalence. *See Carlson v. Astrue*, 604 F.3d 589, 593 (8th Cir. 2010) ("The ALJ's consideration of Dr. Staples's signed RFC assessment satisfied the obligation to receive an expert opinion on equivalence.");[5] *see generally* 20 C.F.R. § 404.1526(c)-(d). The ALJ reviewed Dr. Ballard's opinion and stated she gave the opinion "significant weight." Therefore, the ALJ had adequate support to decide medical equivalence.[6]

Plaintiff argues further the ALJ erred at step three because the evidence shows Plaintiff's impairments equal one of the listed impairments. Plaintiff argues the evidence shows "Landreth's extreme obesity, combined with the findings of record, rendered the severity of his condition equal to the other requirements of Listing 1.02A[.]" Listing 1.02 concerns the major dysfunction of a joint characterized by gross anatomical deformity, chronic joint pain/stiffness, limited range of motion, and either joint space narrowing, bony destruction, or ankylosis shown by accepted medical imaging. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.02A. Listing 1.02A requires the claimant to show the joint impairment at issue involves at least one major peripheral

---

[5] *See also Elwood v. Colvin*, No. CIV. 13-3645 JRT/HB, 2015 WL 179391, at *9 (D. Minn. Jan. 14, 2015); *Stover v. Colvin*, No. CIV. 12-2910 JNE/FLN, 2014 WL 127028, at *7 (D. Minn. Jan. 14, 2014); *Smith v. Astrue*, No. CIV. 09-2996 RHK/AJB, 2011 WL 888112, at *12 (D. Minn. Feb. 1, 2011) report and recommendation adopted, No. CIV. 09-2996 RHK/AJB, 2011 WL 923383 (D. Minn. Mar. 11, 2011).

[6] To the extent that Plaintiff argues an updated medical opinion on equivalency was required because additional medical evidence was received after Dr. Ballard's report was submitted, *see* SSR 96-6p, the Court rejects such an argument. The additional medical records received after Dr. Ballard conducted his CE appear largely in line with his report. It is reasonable to conclude that the ALJ did not believe the additional evidence would "change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments."

weight-bearing joint (i.e., hip, knee, or ankle) and results in an inability to ambulate effectively. *Id.* An inability to ambulate effectively means the claimant has "an extreme limitation of [his] ability to walk" or, in other words, the joint impairment "interferes very seriously with [his] ability to independently initiate, sustain, or complete activities." *Id.* at § 1.00B2b.

Here, the ALJ's decision states that "[t]he undersigned considered the applicable listings, and the claimant's impairments do not meet or equal in severity the criteria of any listing or combination of listings." Although the ALJ's written decision at step three is conclusory and does not make specific findings, reversal is not warranted if the ALJ's conclusion is supported by substantial evidence in the record." *Pritchett v. Astrue*, No. 6:11-CV-03338-NKL, 2012 WL 1980730, at *4 (W.D. Mo. June 1, 2012) (citing *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir.2011)); *see also Gomilla-Levy v. Astrue*, No. 4:07CV1648 AGF, 2009 WL 426455, at *1 (E.D. Mo. Feb. 19, 2009). The Court finds the ALJ's conclusion is supported by substantial evidence. Even assuming Plaintiff presented sufficient medical findings equal in severity to meet all other criteria listed in Listing 1.02A, Plaintiff failed to demonstrate an inability to ambulate effectively. The evidence shows Plaintiff sometimes walks with a limp or waddle and has difficulty walking distances longer than 100 yards or on uneven surfaces. However, the evidence also shows Plaintiff can walk without the assistance of an assistive device, that walking does not limit the use of his upper extremities, that Plaintiff typically travels alone, and that he can carry out routine ambulatory activities such as shopping and banking without assistance. Therefore, although Plaintiff has impairments that affect his ability to ambulate, there is substantial evidence in the record to conclude that Plaintiff's knee impairments do not render him incapable of ambulating effectively as described in Listing 1.02A and 1.00B2b. *See Schultz*

*v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007); *Cannady v. Colvin*, No. 4:14-CV-00372-NKL, 2015 WL 139762, at *4 (W.D. Mo. Jan. 12, 2015).

In sum, the Court finds the ALJ had sufficient evidence to render a decision regarding the medical equivalence of Plaintiff's impairments vis-à-vis the listed impairments and the ALJ's conclusion that Plaintiff does not satisfy Listing 1.02A is supported by substantial evidence.

### 2. ALJ did not err in assessing Plaintiff's credibility

In evaluating the intensity and persistence of a claimant's symptoms, such as pain, the court will assess the claimant's credibility. The Eighth Circuit has long required an ALJ to consider the following factors in evaluating a claimant's credibility: "(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints." *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011). The ALJ "may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them" but the ALJ may find such allegations not credible "if there are inconsistencies in the evidence as a whole." *Id.* "Questions of credibility are for the ALJ in the first instance" and "[i]f an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, we will normally defer to that judgment." *Whitman v. Colvin*, 762 F.3d 701, 707 (8th Cir. 2014).

Plaintiff argues the ALJ's credibility determination is erroneous in three respects. First, Plaintiff argues the ALJ improperly considered Plaintiff's reported daily activities to weigh against his credibility. Plaintiff states "the Eighth Circuit has repeatedly observed that the ability to do activities such as light housework provides little or no support for a finding that a claimant

can perform full-time competitive work." Plaintiff somewhat misstates the law. The Eighth Circuit repeatedly holds that a claimant's ability to engage in personal activity such as light work "does not constitute substantial evidence" that the claimant has the functional ability to engage in substantial gainful activity and, in evaluating a claimant's daily activities, the ALJ should consider "the quality of the daily activities and the ability to sustain activities, interests, and relate to others over a period of time and the frequency, appropriateness, and independence of the activities[.]" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007). "[A]cts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009). Here, the ALJ found "the claimant's intact range of independent daily activities are inconsistent with the functional limitations to the degree alleged." The ALJ did not err in considering Plaintiff's daily activities as one factor weighing slightly against his credibility. *See, e.g., Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008).

Plaintiff next argues the ALJ erred when he found Plaintiff failed to seek care for his alleged knee and back impairments, and by using that finding to discount Plaintiff's credibility. Plaintiff testified at the hearing that he was not receiving any kind of medical treatment for his knee and back problems, that no one had recommended surgery for his knee and back problems, and that he was only taking over-the-counter medication for the pain associated with his knee and back problems. In assessing credibility, the ALJ stated that Plaintiff "did not seek medical care for his knees and back, suggesting milder symptoms and functional limitations that alleged." The Court cannot say the ALJ's finding was unsupported by substantial evidence or clearly erroneous.[7] *See Moad v. Massanari*, 260 F.3d 887, 890 (8th Cir. 2001) (citing *Gwathney v.*

---

[7] The Court further notes that the ALJ "considered the impact obesity has on limitation of function . . . including that his weight may worsen his knee arthritis problems, breathing, and ability to ambulate[.]" Tr. 14.

9

*Chater*, 104 F.3d 1043, 1045 (8th Cir.1997) ( "failure to seek medical assistance for her alleged physical . . . impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits"); *see also Luckenbach v. Barnhart*, 36 F. App'x 872, 873 (8th Cir. 2002) ("Although the records she submitted to the Appeals Council reflect more medical visits for complaints consistent with CFS . . . this Court may not reverse an ALJ's decision 'merely because substantial evidence may allow for a contrary decision[.]'").

Finally, Plaintiff argues his work history alone does not constitute sufficient evidence to support an adverse credibility finding. The Court finds this argument without merit because the ALJ relied on multiple *Polaski* factors to discount Plaintiff's credibility, not simply his work history. As discussed above, the ALJ properly considered Plaintiff's daily activities and failure to seek medical attention in assessing Plaintiff's credibility. Moreover, the ALJ found the objective medical evidence and the dosage/effectiveness of medication to weigh against Plaintiff's credibility. Lastly, the ALJ noted that Plaintiff's "spotty [work] history also raises the question of whether he is unemployed due to his alleged impairments or other reasons." The ALJ's consideration of Plaintiff's work history, in addition to other factors, was appropriate in assessing Plaintiff's credibility. *See Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir.1993) (claimant's credibility is lessened by a poor work history).

Based on the foregoing, the Court finds the ALJ considered the appropriate factors in assessing Plaintiff's credibility and provided good reasons for explicitly discrediting Plaintiff's testimony. Therefore, the ALJ's conclusion that Plaintiff exaggerated the intensity and persistence of his symptoms – only to the extent inconsistent with the RFC – is entitled to deference.

### 3. ALJ did not err in determining Plaintiff's past relevant work

Finally, Plaintiff argues the ALJ erred at step four by determining Plaintiff could perform his past relevant work. Plaintiff argues the ALJ failed to fulfill her obligation to fully and fairly investigate and make explicit findings as to the physical and mental demands of Plaintiff's past relevant work. The Court finds this argument without merit. The ALJ concluded, based on the testimony of the vocational expert, that Plaintiff could perform his "past relevant work as a security guard (DOT 372.667-034, light, SVP 3) and gate guard 9 (DOT 372.667-030, light, SVP 3)" as such occupations are "actually and generally performed" in the national economy. Such findings are sufficient to fulfill the ALJ's duty at step four. *See Pfitzner v. Apfel*, 169 F.3d 566, 569 (8th Cir. 1999) ("The ALJ must also make explicit findings regarding the actual physical and mental demands of the claimant's past work. The ALJ may discharge this duty by referring to the specific job descriptions in the Dictionary of Occupational Titles that are associated with the claimant's past work." (internal citations, quotations omitted)); *Stefancik v. Colvin*, No. 2:14-04004-DGK-SSA, 2014 WL 4854610, at *3 (W.D. Mo. Sept. 30, 2014) ("In any event, if Plaintiff can perform a past job either as it was actually performed or as it is generally performed in the national economy, she is not disabled."); *see, e.g., Young v. Astrue*, 702 F.3d 489, 491-92 (8th Cir. 2013) (sufficient where ALJ stated: "The claimant is capable of performing past relevant unskilled light work as a factory packer as described in ... [DOT] # 920.685–026 and unskilled light work as a factory assembler DOT # 795.687–014.").[8]

---

[8] Plaintiff also made certain arguments with respect to the ALJ's RFC assessment and the adequacy of the question posed to the vocational expert during the hearing. Specifically, Plaintiff noted the original transcript stated the ALJ asked about the ability to walk 200 yards yet the RFC stated the Plaintiff could only walk 100 yards. Plaintiff argued, therefore, that the VE's testimony that Plaintiff could perform his past relevant work was unsupported by evidence. Prior to filing Defendant's brief, Defendant submitted a corrected transcript that showed the first transcript incorrectly stated "200 yards" rather than "100 yards." Plaintiff's counsel reviewed the audio recording and stated the recording "indicates that the first certified transcript may have been incorrect as the ALJ appears to say 'stand up and walk up to short distances up to a hundred yards.'" Plaintiff no longer pursued his arguments related to the adequacy of the question posed to the VE.

11

## CONCLUSION

For the reasons set forth herein, there is substantial evidence on the record as a whole to support the ALJ's disability determination. Accordingly, the Commissioner's denial of benefits is hereby **AFFIRMED**.

**IT IS SO ORDERED**.

Dated: June 8, 2015

 */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**